UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
JAMES K. BREDAR
UNITED STATES MAGISTRATE JUDGE
MDD_JKBChambers@mdd.uscourts.gov

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0950 OFFICE
(410) 962-2985 FAX

March 26, 2010

TO ALL COUNSEL OF RECORD:

　　　　Subject:  *Glenda Gross v. Michael J. Astrue, Comm'r Soc. Sec. Administration*
　　　　　　　　　Civil Action No.:  JKB-09-1456

Dear Counsel:

　　　　On June 4, 2009, the Plaintiff, Ms. Glenda Gross, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits ("DIB").  (Paper No. 1.)  I have considered the parties' cross-motions for summary judgment (Paper Nos. 11 & 17) and Ms. Gross's response to Defendant's motion for summary judgment (Paper No. 18).  I find that no hearing is necessary.  Local Rule 105.6.  This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3).  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  I am reversing the agency's decision, and I am writing this letter to explain my rationale.

　　　　The Appeals Council denied Ms. Gross's request for review (Tr. 1-3), so the decision of the Administrative Law Judge ("ALJ") is the final, reviewable decision of the agency.  In his written decision, the ALJ found that Plaintiff had acquired sufficient quarters of coverage to remain insured through September 30, 2009.  (Tr. 13.)  Ms. Gross's benefits application on May 4, 2006, was based upon her claim of disability due to fibromyalgia, sleep apnea, lung problems, carpal tunnel, heart problems, irritable bowel syndrome, and "cronic" pain disorder. (Tr. 92, 108.)  Her alleged onset date of disability was August 25, 2004.  (Tr. 92.)

　　　　After a hearing at which Plaintiff, who was represented by counsel, and a Vocational Expert testified, the ALJ determined that Plaintiff had three severe impairments:  affective disorder, fibromyalgia, and carpal tunnel syndrome.  (Tr. 19.)  He further decided that Ms. Gross does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the Listing of Impairments ("LOI"), 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 17.)  The ALJ then determined that Plaintiff has the residual functional capacity ("RFC") to perform a significant range of light work with the following restrictions: limitation to routine, repetitive, simple tasks and occasional performance of postural activities. (Tr. 18.)  Consequently, Ms. Gross was judged by the ALJ as being capable of performing her past relevant work of fast-food worker because such work did not require the performance of work-related activities precluded by her RFC.  (Tr. 23.)  Accordingly, the ALJ concluded that

Plaintiff was not under a disability from August 25, 2004, through the date of decision, September 3, 2008.  (*Id.*)

On appeal to this Court, Plaintiff makes three contentions:  (1) the ALJ erred when he failed to properly consider Ms. Gross's fibromyalgia; (2) the ALJ erred when he failed to consider obesity and analyze Plaintiff's combination of impairments; and (3) the ALJ failed to appropriately consider Plaintiff's pain. (Paper No. 11 at 14-15.)

Issue 1:  Consideration of Plaintiff's Fibromyalgia

Plaintiff's first argument appears to rest on a misreading of the ALJ's opinion.  She states that the ALJ incorrectly determined that she was able to return to her past relevant work as a fast food worker "at the sedentary work level." (Paper No. 11 at 15.)  In fact, the ALJ determined that Ms. Gross was capable of doing "light" work, rather than being restricted to sedentary work. (Tr. 18.)  Otherwise, Plaintiff faults the ALJ because she alleges that the ALJ failed to take her problem of fibromyalgia seriously and that his "misunderstanding" of fibromyalgia is reflected in his disagreement with the opinions of two of her treating physicians that she was incapable of even sedentary work.  That the ALJ did not credit the opinions of two physicians to the degree that Plaintiff believes he should have, about which more will be said shortly, does not prove that he "misunderstood" fibromyalgia or did not take the condition seriously.  Moreover, Plaintiff contends that the ALJ ignored Social Security Ruling 99-2p because the evidence in her case satisfies the criteria stated in the ruling, but this argument is misdirected.  The ALJ recognized fibromyalgia as one of Ms. Gross's severe impairments and took it into account when he determined her RFC, thus satisfying the ruling.

Substantial evidence supports the ALJ's decision to discount the worth of the drastic opinions offered by Dr. M. Eyad Dughly and Dr. Edmund Tkaczuk.  They both filled out functional assessment forms indicating that Ms. Gross was physically and mentally incapable of performing even sedentary work.  (Tr. 557-65, 570-78.)  The ALJ addressed these physicians' opinions by stating:

> As for the opinion evidence, the undersigned finds the opinions of Dr. Tzaczek [sic] and Dr. Dughly, insofar as they concern the claimant's mental functioning limitations, to be wholly inconsistent with and unsupported by their own treatment records and by the other medical evidence of record.  Simply put, neither of their opinions is substantiated by any documentary evidence proffered in this case.  Additionally, the extreme findings of their opinions addressing areas not of their specialty, further diminishes their overall credibility.  Furthermore, the undersigned finds the opinions of Dr. Tzacaek [sic] and Dr. Dughly, insofar as they concern the claimant's physical abilities and limitations, also are wholly inconsistent with and unsupported by their own treatment records and by the other medical evidence of record.  Again,

> neither of their opinions is substantiated by any documentary evidence proffered in this case and the extreme nature of their opinions diminish their credibility. As such, their opinions are given only some weight.

(Tr. 22.) Earlier, the ALJ had noted that Ms. Gross had been given a consultative psychiatric examination by Dr. Mikhail Taller in connection with her disability determination. (Tr. 14.) She reported to Dr. Taller that she had been intermittently depressed since age twenty, that she had never had any hospitalizations or in-patient treatment for psychiatric conditions, that she had seen a psychologist five or ten years earlier, and that she was given antidepressant medications by her rheumatologist and her primary care physician. (*Id.*) Dr. Taller found that Ms. Gross had a generally normal psychiatric examination, noting she appeared depressed and expressed some depressive symptoms. (*Id.*) Dr. Taller concluded that Plaintiff had a mood disorder secondary to medical condition. (*Id.*) The ALJ observed that, despite Plaintiff's allegations of disability based on depression, the record was devoid of any treatment by a trained psychiatrist or psychologist. (Tr. 21.) The ALJ also noted that Dr. Taller had found Plaintiff was independent in her activities of daily living. (*Id.*) Further, the ALJ noted that none of her treating physicians had documented "any work-related limitations or restrictions attributable to any psychiatric condition that prohibited the claimant from engaging in all work activities." (Tr. 22.) Thus, he concluded that Ms. Gross's depression imposed only the limitations on her RFC mentioned previously (*id.*), i.e., that she was limited to routine, repetitive, simple tasks.

As for the physical limitations expressed by Dr. Dughly and Dr. Tkaczuk, the ALJ observed that Dr. Dughly's treatment records showed that Plaintiff "had generally normal physical examinations with only mildly restricted ranges of motion throughout and only some tenderness in her cervical and lumbar muscles." (Tr. 21.) The ALJ additionally noted that the treatment records of Dr. James Wang, a pain management specialist, indicated that Plaintiff's physical examinations revealed generally normal exams with only some pain expressions and tenderness of the muscles. (*Id.*) The treatment records of Dr. Deep Dalal showed that he found no evidence of any active synovitis and that Ms. Gross had normal range of motion throughout. (*Id.*) Also, the ALJ observed that none of her doctors documented any work-related limitations or restrictions that prohibited Plaintiff from engaging in all work activities. (*Id.*) Another factor in the ALJ's analysis was that the assessments by Dr. Dughly and Dr. Tkaczuk were done either after their treatments of Plaintiff had ceased or late in their treatments of her. (*Id.*) Taking these things and others into consideration, the ALJ determined that the evidence of record supported a finding that Ms. Gross's fibromyalgia caused, at most, mildly moderate limitations on her ability to engage in basic work activities. (*Id.*)

The Court concludes that the ALJ's consideration of Ms. Gross's fibromyalgia was based upon applicable legal standards and that his conclusions in this regard were supported by substantial evidence of record.

Issue 2:  Consideration of Obesity and Combination of Impairments

Plaintiff notes that her weight during the relevant time period was around 200 pounds. (Paper No. 11 at 22.)  The ALJ noted that one of her doctors gave her in November 2006 a diagnosis of obesity (Tr. 14, 443) and that another doctor prescribed weight reduction as part of Ms. Gross's overall pain treatment regimen (Tr. 15, 486).[1]  From these facts, Plaintiff argues that Defendant failed to evaluate whether Ms. Gross was obese, whether her obesity was severe or nonsevere, and what effect it had on her condition.  (Paper No. 11 at 23-24.)  Plaintiff did not claim disability due to obesity and did not testify as to any effect her weight had upon her health or activities.

Social Security Ruling 02-1p discusses how obesity should be addressed in the disability determination.  The ruling notes:

> The Clinical Guidelines recognize three levels of obesity.  Level I includes BMIs [body mass index] of 30.0-34.9.  Level II includes BMIs of 35.0-39.9.  Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40.  These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss.
>
> . . .
>
> We will consider obesity in determining whether:
> • The individual has a medically determinable impairment. . . .
> • The individual's impairment(s) is severe. . . .
> • The individual's impairment(s) meets or equals the requirements of a listed impairment in the listings. . . .
> • The individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy.  However, these steps apply only in title II and adult title XVI cases.
>
> . . .
>
> When establishing the existence of obesity, we will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height.  Thus, in the absence of evidence to the contrary in the case

---

[1] Dr. Wang had recommended weight reduction to Plaintiff "to help reduce the stresses on her spine."  (Tr. 486.)  He had described her in his records as "somewhat obese."  (Tr. 497.)

Case 1:09-cv-01456-MJKB   Document 20   Filed 03/26/10   Page 5 of 7
Letter to Counsel – *Glenda Gross v. Comm's Social Security Administration*
March 26, 2010
Page 5

record, we will accept a diagnosis of obesity given by a treating source or by a consultative examiner.

. . .

As with any other medical condition, we will find that obesity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. . . We will also consider the effects of any symptoms (such as pain or fatigue) that could limit functioning.

. . .

There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

. . .

Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing.

. . .

We may also find that obesity, by itself, is medically equivalent to a listed impairment.

. . .

We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment.

> . . .
>
> However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.
>
> . . .
>
> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.
>
> . . .
>
> As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.
>
> . . .
>
> When we identify obesity as a medically determinable impairment . . ., we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify.

SSR 02-1p.

This ruling makes it fairly clear that obesity must be considered by the ALJ in conjunction with his determinations at steps two, three, and four of the sequential analysis prescribed for disability determinations. *See* 20 C.F.R. § 1520 (setting forth steps in sequential analysis). Plaintiff is correct that the ALJ did not discuss obesity in relation to her other impairments, severe and nonsevere. Although it is possible that the ALJ did consider obesity, the absence of discussion in his ruling prevents the Court from knowing whether the ALJ followed the directions set forth in Social Security Ruling 02-1p. Thus, the case must be remanded for further proceedings.

### Issue 3: Consideration of Plaintiff's Pain

Ms. Gross's final argument is that the ALJ failed properly to consider her pain because he did not consider the multiple medications she takes as well as their side effects. (Paper No. 11 at

26.) She also contends that his "discussion of her daily activities was cursory at best, citing only select activities in support of his decision." (*Id.*) Because this case is being remanded, the ALJ will have an opportunity to address this point more fully.[2]

## Conclusion

For the foregoing reasons, the Court will enter a separate order REVERSING the agency's decision, DENYING Plaintiff's Motion for Summary Judgment, GRANTING Plaintiff's Motion for Remand, and DENYING Defendant's Motion for Summary Judgment.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed accordingly.

Very truly yours,

/s/

James K. Bredar
United States Magistrate Judge

JKB/jh

---

[2] The Court notes that the record is devoid of evidence that Plaintiff had any side effects from her medications. In fact, her disability application stated the side effects from her medicines as "None." (Tr. 138, 155.) Likewise, she denied having any side effects from her medication as reflected in Dr. Wang's treatment records. (Tr. 481, 483, 485, 487, 489, 491, 493.)